# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 7394 | **DATE** | 7/3/2002 |
| **CASE TITLE** | Howington vs. Ghourdjian | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Because, as defendants note, the Court lacks the authority to modify a proposed settlement, we deny defendants' and the intervening plaintiffs' request for approval of the settlement. The result of this ruling is to take the case back to where it was immediately before the approval hearing began: ready for trial on the issue of damages. In that regard, the Court will consider all of the evidence that was adduced at the settlement approval hearing and will also permit the parties to make arguments in written form.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | JUL 0 8 2002 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 140 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | U.S. DISTRICT COURT CLERK | JUL 0 8 2002 | |
| OR6 | courtroom deputy's initials | 02 JUL -7 AM 10:45 Date/time received in Central Clerk's Office | date mailed notice mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ROBERT P. HOWINGTON III, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 00 C 7394 |
| | ) |
| MATTHEW GHOURDJIAN, et al., | ) |
| | ) |
| Defendants. | ) |

**DOCKETED**

## MEMORANDUM OPINION AND ORDER   JUL 0 8 2002

MATTHEW F. KENNELLY, District Judge:

The Court previously found defendants liable on a shareholder's derivative claim brought by Robert Howington III on behalf of SellSignal.com, Inc., and scheduled a trial to determine the appropriate remedy. Shortly before the date set for the trial, the four SellSignal shareholders who were not already parties to the case were granted leave to intervene, and they were appointed "lead plaintiffs" for reasons that were explained in an oral ruling. The new lead plaintiffs then accepted a settlement proposal that previously had been made by defendants and asked the Court, pursuant to Fed. R. Civ. P. 23.1, to approve the settlement. The Court converted the remedy trial into a hearing on the appropriateness of the settlement. We have considered the evidence adduced at the hearing and the arguments made by all parties.

In the Court's ruling on liability, we found that a Services Agreement and a Convertible Loan and Security Agreement between SellSignal and defendant Digital Convergence Corp. were self-dealing transactions that defendants had failed to show were the result of fair dealing. *Howington v. Ghourdjian*, No. 00 C 7394, 2002 WL 48056 (N.D. Ill. Jan. 14, 2002). In a

140

subsequent decision, the Court ruled that the appropriate remedy involved payment of "rescissory damages" consisting of the profit to Digital from the SellSignal deal, to be distributed as a *pro rata* dividend to SellSignal's shareholders other than defendants Ghourdjian and Finkelman, the SellSignal fiduciaries who had wrongfully caused SellSignal to enter into the transactions. *Howington v. Ghourdjian,* No. 00 C 7394, 2002 WL 265179 (N.D. Ill. Feb. 25, 2002). *See generally* 13 Fletcher Cyclopedia of the Law of Private Corporations §6028 at 332 (1995). The intended purpose of the remedy trial that was ultimately converted to a hearing on the fairness of the proposed settlement was to determine the amount of the damage award.

The settlement proposed by defendants includes as its primary term the payment by Digital of $250,000 to be distributed *pro rata* to the SellSignal shareholders other than Ghourdjian and Finkelman. In return, the shareholders would generally release all claims against the defendants, and they would be required to convey their SellSignal stock to Digital. Howington's share of the settlement payment would be paid net of $40,000 that he is claimed to owe to SellSignal pursuant to his stock subscription agreement and a promissory note.

In determining whether the approve the settlement of a derivative action, the Court is "required to exercise an informed judgment whether the proposed settlement is fair and reasonable in light of all the relevant factors," *In re Caremark International Inc. Derivative Litigation,* 698 A.2d 959, 961 (Del. Ch. 1996), and whether it was reached free from collusion and fraud. *See, e.g., Maher v. Zapata Corp.,* 714 F.2d 436, 455 (5th Cir. 1983). In determining the fairness of the settlement, the Court must "balance the policy preference for settlement against the need to insure that the interests of the class have been fairly represented." *Barkan v. Amsted Industries, Inc.,* 567 A.2d 1279, 1283 (Del. 1989). The Court "exercises a form of

business judgment to determine the overall reasonableness of the settlement," giving consideration to the probable validity of the claims, any difficulties in enforcing the claims through the courts, the collectibility of a judgment, the delay and expense of litigation, the amount of the settlement as compared with the amount and collectibility of a possible judgment, and the views of the parties involved. *Polk v. Good,* 507 A.2d 531, 536 (Del. 1986). The parties advocating the settlement bear the burden of persuading the Court that the settlement is fair and reasonable. *Caremark,* 698 A.2d at 967.

If the proposed settlement simply involved payment of $250,000 in return for dismissal of the present lawsuit and a release of claims, the Court would approve it. First, though we are comfortable that our prior rulings in the case were correct, there is no question that defendants have serious issues upon which to pursue an appeal. These include whether the remedy adopted by the Court is a proper remedy for a self-dealing transaction that was conceded to be fair as to price and claimed to be unfair only with respect to the manner of dealing, and whether it was appropriate to direct the damage award to a subset of the shareholders rather than to SellSignal itself.

Second, though there does not appear to be any question regarding the ability of the defendants to pay a judgment, an appeal, like the rest of the case up to this point, is likely to be hard-fought, time-consuming, and expensive for all involved, and that is a consideration that weighs in favor of settlement. Another factor pointing in favor of approval is the fact that the four non-defendant shareholders other than Howington (whose total holdings slightly exceed Howington's) advocate the settlement.

The reasonableness of the amount to be paid pursuant to the settlement is hotly disputed.

Howington maintains that $250,000 represents only a fraction of the likely judgment plus attorney's fees, which he says are recoverable over and above the amount of any damage award by virtue of a provision of the Services Agreement. But there is a serious dispute over the amount of profit that Digital has earned and will earn from the transactions. Among other things, defendants argue that Howington's calculation of the profit is seriously overblown, and they have offered an alternative calculation that, if accepted, would result in a damage award well under the amount of the proposed settlement. They also point out that Digital is still owed a significant amount by SellSignal, contending that the "profits" on this as-yet-unpaid amount should not be included in the damage award. We express no judgment on the merits of these and the other points urged by defendants, raising them simply to make the point that a damages award in excess of the dollar amount of the proposed settlement is anything but a sure thing. And there are also serious questions regarding the amount of the fees sought by counsel in their capacity as attorneys on the derivative claim (over $300,000) – defendants maintain that the amount claimed is excessive.

For these reasons, if the settlement simply involved an exchange of money for a release of claims and dismissal of the lawsuit, the Court likely would approve it as fair and reasonable. But that is not all the settlement involves: it also requires Howington and the remaining SellSignal shareholders other than Finkelman and Ghourdjian to turn over their SellSignal stock to Digital. The recently-intervening shareholders have no problem with this term, but Howington objects, contending that it is not a proper element of a court-ordered settlement of a derivative claim unless he is allowed to opt out (which effectively would kill the deal). The parties have cited no federal or Delaware cases discussing this issue or anything like it. Defendants have cited only a

single state court case, a 1963 decision from a New York trial-level court. *Levey v. Babb*, 39 Misc. 2d 648, 241 N.Y.S.2d 642 (1963). Thus the Court writes on a clean, or nearly-clean, slate.

It is anything but clear that a court has the authority to force a non-consenting shareholder in a derivative case to give up his stock as part of a court-approved settlement. One would assume that a settlement of a derivative suit properly can include anything that could have been awarded or ordered as part of a judgment on the merits. But if Howington had litigated and won, or even if he had litigated and lost, there would be no basis to force him to give up his SellSignal stock as part of a judgment. On the other hand, it is not unusual for settlement of a derivative case to require shareholders to part with some form of property, namely their right to sue. But that goes almost without saying; a settlement would be virtually meaningless without a provision that eliminated the possibility of reviving the suit. There are also some cases, both derivative cases and class actions seeking damages (a somewhat-analogous universe, though one in which dissenters are permitted to opt-out, *see* Fed. R. Civ. P. 23(c)(2 & 3)), which uphold court-approved settlements that include terms that could not have been part of a judgment on the merits, such as a general release which goes beyond merely extinguishing the pending suit. *See, e.g., Maher*, 714 F.2d at 459; *Shlensky v. Dorsey*, 574 F.2d 131, 144 (3d Cir. 1978); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1287-88 (9th Cir. 1992) (class action). *But see In re Louisiana-Pacific Corp. Derivative Litigation*, 705 A.2d 238, 239-40 (Del. Ch. 1997) (declining to approve settlement that extinguished claims of non-party shareholders). But such cases, fairly read, concern releases of claims that are related to the subject of the derivative suit or class action and that could have been brought either in the suit being settled or in a parallel suit in another forum. They, too, are best read as simply approving the obvious – because a key purpose of a

settlement is to foreclose further litigation involving the subject matter of the suit being settled, requiring a release aimed at achieving that end is a permissible imposition on the shareholders or class members. None of these cases (which, in any event, the parties advocating settlement have not relied upon) supports forcing a derivative plaintiff to relinquish his stock as a condition of settling.

Nor does *Levey* support approval of the settlement. Even if the case were on point, it would be a thin reed upon which to rest approval – a forty year old decision by a trial level court in a jurisdiction whose law is not at issue in this case. But it is not on point. In *Levey* the court approved, as part of the settlement of two derivative actions, a corporate reorganization that effectively eliminated the possibility of inter-corporate transactions of the type that had led to the derivative suits to begin with. Though shareholders had to turn over their corporate stock as part of the settlement, they did not relinquish their ownership rights, as they received stock of the reorganized entity in exchange. The same is not true of the settlement proposed in this case; the settling SellSignal shareholders would be left without any ownership rights at all.

Though the Court is inclined to conclude that it lacks the authority to force a non-consenting shareholder like Howington to give up his stock as part of a settlement of a derivative claim, we need not rest our decision on that basis. Rather, the Court concludes that the inclusion of this term renders the settlement unfair. Defendants argue that the stock of SellSignal is worthless anyway, and that is certainly true from the standpoint of the stock's book value. But stock ownership is not simply a matter of finances; a shareholder also has the right to vote on certain important corporate decisions, such as the election of directors. *See* 8 Del. St. §211. This and the other intangible benefits of stock ownership may be more significant to Howington than

to SellSignal's other shareholders. Howington was one of the corporation's founding members, he assigned his intellectual property to SellSignal, and he has demonstrated an ongoing interest in how that property is disposed of or used. His stock ownership gives him an ongoing ability to scrutinize the corporation's actions. It is not fair or reasonable to require Howington to give this up against his will in order to settle a claim that the Court has already determined has merit. Though we do not discount defendants' desire to avoid future litigation – put bluntly, to get rid of the thorn in their side – that interest, even when combined with the stock's lack of market value and the remaining terms of the settlement, does not make it fair to force Howington to cough up his stock.

Because, as defendants note, the Court lacks the authority to modify a proposed settlement, we deny defendants' and the intervening plaintiffs' request for approval of the settlement. The result of this ruling is to take the case back to where it was immediately before the approval hearing began: ready for a trial on the issue of damages. In that regard, the Court will consider all of the evidence that was adduced at the settlement approval hearing and will also permit the parties to make arguments in written form. The matter is set for a status hearing on July 3, 2002 at 1:00 p.m. so that the parties can advise the Court whether they have any additional evidence (testimony or exhibits) to present on the issue of damages and set a schedule for completion of the briefing on the pending fee petitions.

MATTHEW F. KENNELLY
United States District Judge

Date: July 1, 2002

7